Madam Clerk, please call the next case. 11-035-0, People v. John Bailey. Good morning, Your Honors. My name is Autumn Renee Fincher of the Office of the State Appellate Defender, and I represent John Bailey. Good morning, Justices. I'm Assistant State's Attorney Ahmed Bassett on behalf of the People. Good morning. Good morning to you both. Counsel, if you're ready, you may proceed. Good morning again. My name is Autumn Renee Fincher of the Office of the State Appellate Defender, and I'm here before you today representing John Bailey. John Bailey testified that he wrestled with his girlfriend over a loaded gun. That testimony was more than enough evidence of recklessness to satisfy the slight evidence standard that entitled Bailey to instruction on involuntary manslaughter. At trial, John Bailey testified that on the morning of the incident, he woke up to find his girlfriend, Nakenia Spiers, sitting on top of him with a loaded gun pointed in his face. The two argued. Bailey had received a phone call from another woman on his cell phone, and being his girlfriend, Spiers wanted to know who that woman was. Bailey told her, you know, this woman is nothing. She's no one to me. I love you. And Bailey reminded them, reminded Spiers, that they were supposed to be getting married the next week. At that point, Spiers got off of Bailey, sat down on the edge of the bed, and set the gun down next to her. At the moment that Spiers got off of Bailey and set the gun down, he no longer had it pointed in his face. This is when, as the state noted below, there was a break in the action. This is when the circumstances shifted, such that Bailey's actions after the gun was set down were arguably reckless. Because after Spiers got off of him, set the gun down, Bailey made the decision to get up, he scooted over closer to where the gun was, and sat down next to his girlfriend with the gun between them. They're still arguing, and while they're arguing, Bailey reaches for that gun. Spiers moves it away from him. She then takes it in her hand, raises it above her head, and with her finger on the trigger, Bailey, while her finger's on the trigger, Bailey puts both of his hands over her hand. The two start wrestling back and forth. She's pulling it back, he's pulling it from him. The gun goes off, firing the single bullet that killed Spiers. A jury could have concluded from this testimony that Bailey's act of reaching and wrestling over that gun was reckless. The jury was deprived of that option, though, by the trial court's refusal to give them an instruction on involuntary manslaughter. And the trial court refused this instruction, even though it was that act, the act of struggling over a gun that he assumed was loaded, that this court found entitled the defendant to an involuntary manslaughter instruction in People v. Robinson, a case that was cited in Mr. Bailey's opening and reply briefs. And it is the fact that the gun was not pointed at Bailey when he made the decision to reach for it and struggle over it that made his risk unjustifiable. He didn't reach for the gun when it was pointed in his face. He did not reach for it until after Spiers had gotten up off of him, sat down on the bed, and most importantly, set that gun down. What's the nature of Mr. Bailey's act that makes it reckless? The fact that the gun was not pointed in his face. He reaches for a loaded gun. He assumed it was loaded, even though he knew that he could walk out of that room. He actually got up. He scooted over, in his own words, scooted over and sat down next to her. He consciously disregarded an unjustifiable risk by choosing to reach for that gun. When Spiers got it first, he reaches for it again. And while her finger is on the trigger, he testified that he knew her finger was on the trigger. He made the decision to grab her hand and wrestle over that gun. Does it make a difference that the state's experts said it could not have happened that way? All that is is contradictory evidence. And contradictory evidence, when determining whether or not a jury instruction is warranted, this court and the trial court below cannot weigh the evidence. It's for the jury to determine whether or not the medical examiner, who was not in the room, is accurate, or John Bailey's telling the truth. And they can only do that if they're properly instructed. So because there was some evidence of a reckless act and the judge refused to give that instruction, that makes it reversible error? Yes. So it is John Bailey's testimony that we just talked about that was the some evidence of recklessness. All he had to show was some evidence, even if the medical examiner's testimony contradicted that. Even if he was presenting contradictory theories of defense, such as whether or not it was an accident, that required the trial court to give him an instruction on involuntary manslaughter. And the court's refusal to give that instruction wasn't harmless here. The jury convicted Bailey of second-degree murder only after initially indicating that they couldn't reach a unanimous verdict. This means that they found there was some mitigating evidence presented as to his mental state at the time that gun went off. It also means that they credited John Bailey's testimony to some degree. Because they rejected first-degree murder, they were left only with the choice of second-degree murder or acquittal. But Bailey testified to having committed some culpable conduct, struggling over a loaded gun. So there is the reasonable possibility that the jury might have convicted him of second-degree murder to avoid acquitting him entirely. There is a reasonable probability in this case that the outcome would have been different had the jury been properly instructed. And it is for that reason that we ask this court to reverse Bailey's conviction for second-degree murder and remand the matter for a new trial. Thank you. Thank you. Justices, counsel, and may it please the court. The trial court in this case did not abuse its discretion by denying defendant an involuntary manslaughter jury instruction. Because there was simply no credible evidence that he was reckless when he fatally shot Nkenye Sparks at close range through her left temple. When you use the term credible, isn't that a decision for the trier of fact to decide? Well, the trier of fact in this case, the jury did decide. And it ultimately determined that the defendant committed an intentional act. Now, it's important to... Let's put it another way. Is the finding of credible evidence a question of law? Well, a finding of credible evidence is something that is a question of law because it has to at least meet a minimal threshold in this case. That being some evidence that the defendant acted recklessly. And this court, it's within the domain of this court to make that decision. But whether or not there's some evidence and whether or not there's credible evidence, those are two different questions, right? Well, not really. Because the evidence itself has to have some basis in it. The defendant cannot just make any sort of claim. And if it's contradicted entirely, if the evidence rationally precludes his theory, then it shouldn't be accepted. And in fact, there are cases in DiVincenzo, for example, and in Mitchell, where the defendant's theory was inconsistent with the injuries that the victim sustained. Particularly in Mitchell, which is a First District case that this court decided where you had a victim who came at the defendant with a knife and then the defendant tried to disarm her. And in doing so, the victim had got slashed. Now, the court in that case determined that the defendant's theory that this was a mere accident was not borne out by the fact that the victim suffered multiple stab wounds and in fact had a cut through the jugular of her throat. There was one gunshot in this case, correct? That's correct. That's correct. And notably, when we look at DiVincenzo, a case in which our Supreme Court enumerated several factors which would be indicative of recklessness. In DiVincenzo, one of the factors is whether or not fists were used or whether a gun was used. And what's particularly striking in this case is the fact that it wasn't just a gun that was used. It was a gun that the victim's son testified that he saw the defendant with before. But not only that, the type of injury that was sustained in this case screams that this was an intentional shooting. This was a single gunshot at close range that was an execution-style kill shot. It went directly through and through her left temple and exited through her right temple. This wasn't something where they're struggling for a gun and the shot just goes off indiscriminately and randomly hits an artery and she dies. No. This is an execution kill shot style shot at close range. And a case that we- So that's a question of law that the judge is supposed to decide before he gives the- Well, the judge, in determining whether or not there was some credible evidence, has to determine whether or not what the defendant is saying reaches that standard. And if what the defendant is saying does not comport with any of the other evidence in this case, then it certainly can't be taken at face value and meet that level of some evidence. Now, more particularly, when we look through the whole list of de Vincenzo factors, the first one was the relative size and strength disparity between the defendant and the victim. And here the defendant was taller by two inches, outweighed her by nine pounds. But more importantly, was 15 years younger. He was a 20-year-old man and she was a 35-year-old woman and had every ability to overpower her. Now, the second factor was the severity of the injury. And here, again, if we look at the type of injury that was sustained, it was directly through the victim's left temple and exited through her right temple. Now, arguably the most important factor is really at this point the fact that she suffered defensive wounds. And here is where I think the case really cuts against the defendant's theory. And the nature of her wounds, as the medical examiner testified, was that she had stippling marks on her left arm and on her left forearm close to her elbow. Moreover, these stippling marks indicated, and I quote from the medical examiner's testimony, that she had her left arm bent at the elbow and pressed against her head with her hand slightly to the back or behind her head. Now, this would indicate that it was the defendant who actually had the gun in his hand. Because if her hand, if the victim's hand is behind her head, but she somehow also has the gun, the shot would have either missed the back of her head or would have went through the back of her head, not the front temple. It theoretically, it practically cannot happen. And so the defendant's theory of this case, his version of events just simply does not, it's entirely precluded by what the physical evidence is saying. And moreover, the pillow in this case had a bullet hole in it. Now, the defendant tried to explain this away as saying, oh, it's just a pattern in the pillow. But that's just a completely baseless piece of testimony when the bullet is found in the pillow and there is stippling sticking out of the pillow. And what this, why this evidence is important is because the defendant also testified that the victim was upright when she was shot. But that doesn't really make sense if the pillow also had a bullet hole in it. Now, these are issues, these are facts that this court should ultimately examine in determining whether or not there was some evidence. Because you still have to look at whether there was any basis in what the defendant was saying. Was he at any level telling the truth in this matter? And he wasn't. Now, Hayes, which is a case that examined DiVincenzo and determined that none of the DiVincenzo factors indicated recklessness, also added one more factor, and that was the fact that if the defendant flees, that is a pretty strong indication of consciousness of guilt of an intentional crime. And in this case, we have a defendant who, after shooting the victim, doesn't do what somebody who accidentally shot a victim would do, which a reasonable person would call 911, tell the victim's kids, hey, look, we need to get her some help. No, what does he do? He gets dressed. He leaves the house and happens to have a car waiting for him right there, and not only leaves the scene without calling 911, even though he testifies he had a cell phone, he skips town. He goes to Minnesota to live with his girlfriend and his mother. This is inconsistent with someone who just moments before told his girlfriend that he was planning on marrying her the next week. Now, this factor, in addition to... It was untrue. I'm sorry? He was being untruthful. He was being untruthful, and he was trying to... Because of that, he's not entitled to the instruction. No, it's not just because of that. It was because if we can't believe what's coming out, if the testimony that the defendant provides is simply incredible, there's no basis for then finding that what he's saying provides some evidence of recklessness. The defendant told one story, correct? He did. The medical expert tells a different story, correct? He does, but... So who's supposed to resolve those two stories? Is it for the judge to resolve, or is it for the jury to decide? Well, the jury ultimately did decide it in this case. They had a decision after looking at all the evidence whether the defendant committed an intentional act, and... But they did not get the involuntary manslaughter instruction, correct? Well, they didn't have to in this case, because ultimately, if they determined that this was an accident, they could have acquitted him. And in fact, Robinson, the case that the defendant cites is clear and says specifically that, you know, if a jury had found that the defendant in that case had an unreasonable belief in self-defense, it could have nevertheless found that the killing was accidental and acquitted him. They had that option, but they didn't exercise it. And in finding him guilty of second-degree murder, they determined that he acted intentionally. And so for that reason, even if this court were to decide that an involuntary manslaughter jury instruction should have been given, the error of not giving it would have been harmless regardless, because if they had been given the involuntary manslaughter jury instruction, they would have still returned a verdict of second-degree murder, because they determined that his actions were intentional. And that position is mutually exclusive with also finding that he acted recklessly. And there are reasons, as articulated before, that the evidence produced at trial shows that he was reckless. Now, I'm sorry, not reckless, but intentional. And now, opposing counsel makes this point that there was a break in action and that the threat to the defendant subsided, and so his action of then remaining in the room and wrestling for control over a gun was somehow reckless. But to the contrary, our position is that staying in the room is actually a calculated, deliberate thought. Sitting next to the victim, next closer to the gun, is actually a calculated, deliberate thought. And the fact that he then intentionally uses force, very abruptly, to try to grab the gun, in his words, to get it away from her, indicates that he was having intentional thoughts. He thought this through. And moreover, when a threat subsides, that gives somebody more time to think through their actions. And that's exactly what happened in this case. This isn't a case where, you know, she had the gun to his face and he had to act out of the blue to try to save his life or to try to remove the weapon. No, this was an act where the threat subsided and he had plenty of time to think through what he was doing. And so for that reason, this wasn't a reckless act. This was intentional. And the jury rejected the notion that this was an accident. Ultimately, it decided, after looking at all the evidence, that this was an intentional act. And so for that reason, there was no way that it would have found him guilty of involuntary manslaughter. Now, there are two final reasons that I want to provide for why defendant's actions were not reckless. And the first is that it's because he did not cover the issue. Is that really the issue? Whether the defendant's actions were reckless or not? At the heart of this case, that is the assessment, whether there was some evidence to show that he was reckless. Now, one of the elements of recklessness is that he had a conscious disregard for a substantial and unjustified risk. Okay? And the case in Mitchell is one that is instructive on this point. And the victim came at the defendant with a knife, of course. And in trying to get the knife away from the victim, the victim was stabbed. Now, as a matter of law, the Mitchell court said that the defendant's attempt to, quote, eliminate or at least to mitigate a risk by getting the knife away from the victim showed that the defendant was not in conscious disregard of the risk. And that's exactly what we have here. You have a defendant who was trying to, in his own words, from his own testimony, get the gun away from the victim. It shows that this was not a conscious disregard of the attendant risks. And so Mitchell, on this point, is highly instructive. Moreover, even in Robinson, in footnote 1 on page 774, states that unlike in Mitchell, the defendant's testimony in Robinson showed that his struggle was to defend himself and not simply to secure the weapon. Here we know that the defendant acted to secure the weapon, not just defend himself. And this was not a conscious disregard of the risk. Now, the second reason is that the defendant undertook a justifiable risk. And here we cite Castillo in our brief, which is indicative of this point. And in Castillo, you had the victim draw a gun on the defendant and threatened him. A struggle ensued, and the victim tugged on the defendant's shirt and was shot fatally. Now, the court in Castillo determined that the defendant acted with regard to a justifiable risk. He was presented with this big threat against his life, and so he had to do something. And for that reason, the defendant in this case, at least according to his testimony, acted with respect to a justifiable risk. He was scared for his life, as he stated, just as the defendant was in Castillo. And so he was reacting to a justifiable risk. So on its merits, then, even if we're looking at the very specific elements of what it means to be reckless, he did not consciously disregard the risk that he was getting himself into. And moreover, the risk was justified. So at the end of the day, at the final analysis, the easiest way for this court to rule is to find that the trial court did not abuse its discretion by denying defendant an involuntary manslaughter jury instruction, where the defendant's actions, as understood by the jury, were intentional. And therefore, it would have precluded any finding of recklessness. If there are no further questions, we ask that this court uphold the trial court's decision to deny defendants an involuntary manslaughter jury instruction. Thank you, sir. Thank you. Ms. Fitch. Your Honors, if I may very briefly just address some of the State's arguments. First of all, I think the State appears to confuse some of the standards. The standard on review and at the trial level was not whether John Bailey's testimony conclusively proved that he acted recklessly. It's whether there is some evidence in the record that would have supported a finding that he acted recklessly. And that question is resolved de novo according to the Illinois Supreme Court's most recent reaffirmation of that standard in People v. Washington, which was cited in Defendant's Brief. I can also give you the citation. But that's a 2012 Illinois Supreme Court case. Also, whether or not the evidence is credible is within the province of the jury. And the jury can only make that determination if they're properly instructed on the law. And they weren't properly instructed on the law here because there was some evidence that was presented that John Bailey acted recklessly, which I went into, you know, in opening. And it is discussed in the briefs. The State also discusses at length the cases of Mitchell and Castillo. Mitchell and Castillo are very different than the instant case. In Castillo, the defendant testified that the victim pulled out a gun, pointed it at the defendant. The defendant reached for the gun while it was pointed at him. In Mitchell, the defendant started struggling with the victim while the victim was rushing at him with a gun. I mean, with a knife, I'm sorry. And that is the distinction between Castillo and Mitchell in this case. In this case, Bailey didn't grab the gun while it was pointed at him. He did not touch it until spires had gotten off of him and set down that gun. That is what makes this risk unjustifiable. Also, the State appears to weigh the evidence, cataloging all the evidence that shows that John Bailey acted intentionally. The State comes up here and is weighing the evidence. The trial court may not weigh the evidence, and this court may not weigh the evidence. Again, the standard just goes back to whether or not there was slight evidence in the record that would have supported a finding that John Bailey acted recklessly by struggling over that gun. And as for the fact of, you know, in Hays, that the court found that another factor that might lend itself to a finding that the defendant was not entitled to an instruction on involuntary manslaughter is the consciousness of guilt of fleeing. We're not saying that Mr. Bailey didn't commit culpable conduct. Actually, in fact, he did commit culpable conduct, wrestling over a gun with his girlfriend. And that's why there's the risk that the jury, hearing from Mr. Bailey's own mouth, his own testimony, that he argued that he wrestled over a gun with his girlfriend, that he was culpable in some way, and that they can't acquit him. There is the risk that they couldn't acquit him entirely, and so they found him guilty of second-degree murder, the only mitigated offense that they were instructed on. And because in this record John Bailey's testimony presented slight evidence of recklessness, we again ask that this court reverse his conviction for second-degree murder and remain the matter for a new trial. Thank you. Thank you very much. Thank you both. We'll take this matter under advisory of the court. We'll be in recess.